**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CARLOS FULTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 1:26-cv-04725** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMAZON.COM SERVICES LLC,** | ) | |
| | ) | **Jury Trial Demanded** |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Carlos Fulton ("Plaintiff"), by and through the undersigned counsel, hereby files

this Complaint against Amazon.com Services LLC ("Defendant"), and in support states as follows:

### NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, 42 U.S.C.

§12101 et seq. as amended, ("ADA") seeking redress for Defendant's failure to accommodate

Plaintiff's disability, Defendant's disability-based discrimination, Defendant's disability-based

harassment, and Defendant's retaliation against Plaintiff for engaging in a protected activity under

the ADA.

2. This lawsuit also arises under the (820 ILCS 305/) Illinois Worker's Compensation

Act, ("IWCA"), for Defendant's termination of Plaintiff's employment in retaliation for his

asserting his rights under the IWCA.

### JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 as the

ADA, 42 U.S.C. §12101 *et seq*. is a federal statute.

4. Venue of this action properly lies in the Central District of Illinois, Rock Island Division, pursuant to 28 U.S.C. §1391(b) insofar as a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this district.

5. This Court has supplemental jurisdiction of Count V pursuant to 28 U.S.C. §1367.

## ADMINISTRATIVE PREREQUISITES

6. All conditions precedent to jurisdiction under the ADA of 1990, 42 U.S.C. §12101, *et seq*. have been satisfied.

7. Plaintiff filed a charge of employment discrimination on the basis of disability with the Equal Employment Opportunity Commission ("EEOC") (attached hereto as Exhibit "A").

8. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

9. This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the EEOC's Dismissal and Notice of Right to Sue.

## THE PARTIES

10. Plaintiff, Carlos Fulton, is a natural person, over 18-years-of-age, who at all times relevant to the allegations in this Complaint resided in Cook County, Illinois.

11. Defendant, Amazon.com Services LLC whose address is 201 Emerald Dr, Joliet, IL 60433-3281, is a limited liability company specializing in the e-commerce and retail services industry, that at all times material to the allegations in this Complaint was doing business in and for Will County, Illinois.

12. Plaintiff was employed by Defendant as an "employee" within the meaning of the ADA, 42 U.S.C. §12111(4).

13. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by ADA, and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. §12111(5)(A).

**BACKGROUND FACTS**

14. Plaintiff worked for Defendant as a Picker from on or about November 29, 2025, to his unlawful termination on or about November 1, 2025.

15. As a Picker, Plaintiff's duties included, but were not limited to, the following:

- Regularly standing, walking, bending, reaching and climbing stairs or ladders for item retrieval;

- Scanning items and bins to update inventory systems and sorting products into totes; and

- Utilizing hand-held scanners and working around automated systems.

16. Plaintiff has a physical impairment, specifically severe injuries to his knee, that substantially limits major life activities, including walking, lifting, sitting, and standing.

17. Regardless of his disability, Plaintiff was able to perform the essential functions of his job, with or without reasonable accommodation.

18. Plaintiff is a "qualified individual" as defined under the ADA.

19. On or about December 21, 2025, Plaintiff was injured at work during a warehouse accident.

20. While crossing a section of the warehouse, Plaintiff announced "crossing," as is standard practice among employees to ensure safety and prevent accidents.

21. However, a coworker did not acknowledge Plaintiff's warning and collided with Plaintiff's knee while maneuvering a cart.

3

22. Plaintiff immediately reported the incident to Manager Lori Line and the AMCare Wellness Center OMR Tiona Gause.

23. Plaintiff completed an injury report, but he noticed discrepancies in the report.

24. Plaintiff contested the discrepancies, noting it appeared to absolve the other employee of responsibility.

25. Despite this, management refused to amend the report and allowed Plaintiff to file a separate complaint with Human Resources (HR).

26. After receiving treatment at the AMCare Wellness Center, Plaintiff requested reasonable accommodation to reduce pain and inflammation in his knee, thereby engaging in protected activity.

27. Specifically, Plaintiff requested to be provided with a 30-minute break every 2 hours to allow time to treat his knee with ice, stretch, and sit.

28. The accommodation he requested would have enabled him to manage the pain and discomfort while continuing to perform his essential job functions.

29. Plaintiff's request was denied.

30. Plaintiff escalated the matter to HR, where the same denial was upheld, and he was advised to seek cross-training opportunities, which were also denied, as he had not yet completed a sufficient duration of employment.

31. Plaintiff continued working despite the ongoing pain, as he was not advised to leave or seek outside medical attention.

32. The day after the knee injury, on or about December 22, 2025, Plaintiff was assigned to help in the Damage Line department, where he was instructed to remove hazardous batteries from returned products.

4

33. During this task, a piece of plastic from a damaged product lodged between his eye and eyelid.

34. He immediately reported the injury to Coordinator Debbie (LNU) and received first aid at the AMCare Wellness Center.

35. Plaintiff requested to fill out an incident report for the eye injury but was denied by AMCare, prompting him to report the safety concern to HR.

36. On or about December 28, 2025, Plaintiff was denied treatment at AMCare and reported the encounter to HR.

37. Despite this, and the fact that Plaintiff's managers were aware he was receiving ongoing medical treatment, Plaintiff was repeatedly assigned to pick areas on different floors and aisles that required him to walk long distances, which aggravated his knee pain and discomfort.

38. This extra walking not only caused Plaintiff physical discomfort but also created situations where he was unable to take timely breaks and return to his designated picking desk.

39. As part of his assignments, Plaintiff was also instructed to turn in closed totes that had already been scanned and placed onto the conveyor.

40. This additional work further disrupted Plaintiff's work and created a situation where he was scrutinized and disciplined for breaks, walking distances, and performance metrics that were negatively affected by the extra physical demands placed on him due to his injury.

41. Between on or about December 30, 2025, and on or about January 7, 2026, Plaintiff filed a workers' compensation claim due to his knee injury.

42. This action was prompted by Defendant's failure to address Plaintiff's ongoing pain and need for medical accommodation, including the denial of immediate accommodation

following the injury and the refusal to provide reasonable accommodations despite his repeated requests.

43. On or about January 17, 2026, Plaintiff received a copy of the Job Safety Analysis (JSA) as part of the Job Placement and Temporary Work Placement Acknowledgement (TWPA) process, which outlined his medical restrictions.

44. On or about January 20, 2026, Plaintiff was assigned to work on the bin project, which required him to stand on a ladder for the duration of the project refurbishing picking bins.

45. Plaintiff expressed concern about the assignment not aligning with his medical restrictions and asked management whether he would receive employment status credit for completing the assignment.

46. Defendant stated that he would not receive employment status credit for completing the assignment.

47. After asking if there had been any modifications to his accommodation request, Plaintiff was given the option to return to his previous duties as a picker, which he accepted.

48. Later that same day, Plaintiff was pressured to sign the TWPA, but he requested corrections due to discrepancies, including an expiring restriction end date.

49. Plaintiff was informed that if he did not accept Defendant's offer, he would not be eligible for other leave, and his employment status and rights to workers' compensation or other disability benefits could be affected.

50. Plaintiff sent a written request for corrections and reaffirmed his willingness to accept accommodations.

51. However, instead of responding to Plaintiff's email, the safety manager approached him in person while Plaintiff was working between picking aisles, attempting to intimidate him into signing the contested TWPA.

52. The safety manager asked Plaintiff what he wanted, to which Plaintiff replied that he preferred a written response to his email, as Amazon had not been responsive to the interactive process.

53. The safety manager, becoming visibly agitated, yelled at Plaintiff, refused his request, and insisted that they speak in person.

54. On or about January 24, 2026, Plaintiff arrived at the AMCare Wellness Center and raised concerns about modifications to the TWPA.

55. He was told by Defendant that the offer date for accommodations would be provided by his medical provider.

56. Plaintiff responded that the TWPA was provided by Defendant and that only Defendant could determine an offer date.

57. He reiterated that his medical provider could not make an offer date on Defendant's behalf.

58. On the same day, Plaintiff was disciplined for allegedly being six minutes late returning from his break.

59. The disciplinary action was based on an inaccurate claim that Plaintiff was observed coming from break late.

60. However, upon information and belief, scan data from the system shows that Plaintiff was actively working at the same time he was being disciplined, after the scan-to-scan break period, and that this incident affected his permanent hire status.

61. Despite his injury and the ongoing accommodation requests, Manager Lori informed Plaintiff that they had the same expectations for everyone assigned to the task.

62. On or about April 5, 2026, Plaintiff was terminated for alleged performance issues and write-ups.

63. Defendant failed to engage in an interactive process with Plaintiff, including refusing to grant Plaintiff's requested worker's compensation and refusing to grant Plaintiff time off to attend to his knee injuries.

64. Defendant treated Plaintiff less favorably than similarly-situated non-disabled employees, including by refusing to provide Plaintiff with workers' compensation benefits for his knee injury and denying his request for medical leave or accommodations, despite the physical demands of his job and the ongoing nature of his injury.

65. Ultimately, on or about April 5, 2026, Plaintiff was terminated on the basis of Plaintiff's disability, for engaging in a protected activity, and pursuit of his rights under the IWCA, as described above.

66. The purported justification for termination was unlawful discrimination on the basis of his disability and seeking of his rights under the IWCA, as Defendant's decision to terminate Plaintiff was based on Plaintiff's disability and the symptoms resulting from Plaintiff's workplace injuries.

67. Plaintiff can show that he engaged in statutorily protected activity, a necessary component of his retaliation claim, because Plaintiff engaged in protected activity, including that he requested reasonable accommodations, sought workers' compensation, and requested to seek medical attention in relation to a workplace injury; and Defendant retaliated against Plaintiff for engaging in this protected activity.

## COUNT I
### Violation of the Americans with Disabilities Act
### (Disability-Based Discrimination)

68. Plaintiff repeats and re-alleges all preceding paragraphs as though fully stated herein.

69. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*.

70. Plaintiff met or exceeded performance expectations.

71. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

72. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability.

73. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

74. Plaintiff is a member of a protected class under the ADA due to Plaintiff's disability.

75. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

76. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
### Violation of the Americans with Disabilities Act
### (Disability-Based Harassment)

77. Plaintiff repeats and re-alleges all preceding paragraphs as though fully stated herein.

9

78. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and harassed Plaintiff on the basis of Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq.*

79. Defendant knew or should have known of the harassment.

80. The disability-based harassment was severe or pervasive.

81. The disability-based harassment was offensive subjectively and objectively.

82. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq.*, due to Plaintiff's disability.

83. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

84. As a direct and proximate result of the harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT III**
**Violation of the Americans with Disabilities Act**
**(Retaliation)**

85. Plaintiff repeats and re-alleges all preceding paragraphs as though fully stated herein.

86. Plaintiff is a member of a protected class under 42 U.S.C. §12101, *et seq.*

87. During Plaintiff's employment with Defendant, Plaintiff engaged in protected activity, including by requesting worker's compensation information and requesting time off to attend to his disability-related workplace injuries.

88. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.*

10

89. Despite Plaintiff's protected activity, Defendant failed to engage in a good-faith interactive process or otherwise address Plaintiff's requests regarding disability-based requests for accommodation.

90. Defendant further failed to take appropriate corrective or preventative measures to ensure Plaintiff could work after treating his injuries or to prevent the continuation of discriminatory treatment based on his disability.

91. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff engaging in protected activity, thereby violating the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*.

92. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

93. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

94. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT IV**
**Violation of the Americans with Disabilities Act**
**(Failure to Accommodate)**

95. Plaintiff repeats and re-alleges all preceding paragraphs as though fully stated herein.

96. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq*.

97. Plaintiff is a qualified individual with a disability.

98. Defendant was aware of the disability and the need for accommodations.

99. Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodations.

100. Plaintiff's reasonable accommodations that were requested was not an undue burden on Defendant.

101. Defendant did not accommodate Plaintiff's disability.

102. Plaintiff is a member of a protected class under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq.*, due to Plaintiff's disability.

103. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

104. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT V
**Violation of (820 ILCS 305/4) Illinois Worker's Compensation Act
Demand for Relief for Retaliatory Discharge**

105. Plaintiff repeats and re-alleges all preceding paragraphs as though fully stated herein.

106. (820 ILCS 305/4) prohibits employers from retaliating against employees for exercising their rights under the Act.

107. Plaintiff suffered a work injury and attempted to seek workers' compensation information and medical care he was entitled to under (820 ILCS 305/4) Illinois Worker's Compensation Act and exercise his rights.

12

108. Defendant refused Plaintiff's attempt to seek medical care and refused to provide Plaintiff with workers' compensation information.

109. Plaintiff was then terminated in retaliation for suffering a workplace injury, attempting to seek workers' compensation information, and attempting to seek medical care related to his workplace injury.

110. As a result of said interference, retaliation, and discharge, Plaintiff has suffered damages, including but not limited to loss of earnings, loss of ability to earn money, and mental anguish. The losses have occurred in the past and will continue in the future.

**<u>RELIEF REQUESTED</u>**

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

a.  Back pay;

b.  Payment of interest on all back pay recoverable;

c.  Front pay;

d.  Loss of benefits;

e.  Compensation for lost wages, benefits, and other remuneration;

f.  Compensatory and punitive damages for pain, suffering, mental anguish, loss of enjoyment of life;

g.  Reasonable attorneys' fees and costs;

h.  Award pre-judgment interest if applicable; and

i.  Award Plaintiff any and all other such relief as the Court deems just and proper.

13

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated: April 27, 2026.

*/s/ Yasmeen Elagha, Esq.*
Yasmeen Elagha, Esq.
Mohammed Badwan, Esq.
Kelly Dean Pearce, Esq.
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone: (630) 575-8181
Fax: (630) 575-8188
yelagha@atlaslawcenter.com
mbadwan@atlaslawcenter.com
dpearce@atlaslawcenter.com
*Counsel for Plaintiff*

14